**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Annette M. Dallas,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-16-01392-PHX-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff Annette M. Dallas's Application for Supplemental Security Income by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 17, "Pl.'s Br."), and Defendant SSA Commissioner's Opposition (Doc. 21, "Def.'s Br."). The Court has reviewed the briefs and Administrative Record (Doc. 16, R.) and now reverses the Administrative Law Judge's decision (R. at 21-34) as upheld by the Appeals Council (R. at 1-3).

**I.  BACKGROUND**

Plaintiff filed her Application on November 16, 2011, for a period of disability beginning July 1, 2006. (R. at 21.) Plaintiff's claim was denied initially on June 28, 2012 (R. at 86), and on reconsideration on January 9, 2013 (R. at 87). Plaintiff then testified at a hearing held before an Administrative Law Judge ("ALJ") on March 31, 2014, (R. at 39-71), where she amended her alleged onset date to November 16, 2011 (R. at 42), the

same day as she filed her Application. On September 24, 2014, the ALJ denied Plaintiff's Applications. (R. at 21-34.) On March 4, 2016, the Appeals Council upheld the ALJ's decision. (R. at 1-3.) The present appeal followed.

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ found that Plaintiff has severe impairments of chiari malformation[1] ("CM"), status post-surgery; spinal stenosis of the lumbar region; degenerative disc disease ("DDD") with displacement of lumbar without myelopathy; post-laminectomy syndrome of the cervical region; cervical radiculitis with radiculopathy; myalgia and myositis[2]; chronic pain syndrome; cervical arthropathy[3]; post-traumatic stress disorder ("PTSD"); bilateral shoulder arthropathy; morbid obesity; and depression. (R. at 23.) The ALJ concluded Plaintiff does not have the residual functional capacity ("RFC") to perform her past relevant work but, relying on the testimony of a Vocational Expert ("VE"), the ALJ concluded Plaintiff has the RFC to perform sedentary, unskilled work with some limitations, including work as a document preparer, election clerk, or addresser, such that Plaintiff is not disabled under the Act (R. at 32-34).

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on

---

[1] A chiari malformation is a structural defect at the base of the skull and cerebellum, the part of the brain controlling balance, and is most often congenital, or present at birth; it can also be caused later in life as a result of traumatic injury, disease, or infection.

[2] Myalgia is muscle pain, and myositis is muscle inflammation.

[3] Arthropathy is joint disease; arthritis, or joint inflammation, is one form of arthropathy.

legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff raises five arguments for the Court's consideration: (1) the ALJ erred in weighing treating and examining medical care providers' opinions; (2) the ALJ erred in finding Plaintiff's testimony less than fully credible; (3) the ALJ improperly rejected lay witness testimony; (4) the ALJ's own findings at minimum establish that Plaintiff was disabled as of her 50th birthday in 2015; and (5) the ALJ's hypothetical question to the VE did not include all of Plaintiff's limitations. (Pl.'s Br. at 13-23.) The Court agrees that the ALJ committed reversible error.

### A. The ALJ Improperly Weighed Plaintiff's Testimony

Plaintiff argues that the ALJ erred in her consideration of Plaintiff's symptom testimony. (Pl.'s Br. at 18-21.) While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). This is because "pain testimony may establish greater limitations than can medical evidence alone." *Id.* The ALJ may properly consider that the medical record lacks evidence to support certain symptom testimony, but that cannot form the sole basis for discounting the testimony. *Id.* at 681. The ALJ may also properly consider inconsistencies in the claimant's testimony, including inconsistencies between the claimant's testimony of daily activities and symptom testimony.

As the ALJ noted, Plaintiff has reported pain, weakness, dizziness, intense migraine headaches, and difficulty lifting, bending, standing, reaching, sitting, talking, and stair-climbing on account of CM and DDD, and she uses either a cane or wheelchair

to ambulate. (R. at 26-29.) She has had surgery on her neck and lumbar spine and takes Oxycontin twice daily for pain and muscle spasms. (R. at 26.) While she has reported she is able to drive short distances, her family drives and shops for her. (R. at 26.) She has the ability to prepare meals, take care of personal hygiene, watch television, read, and operate a computer. (R. at 26.)

Plaintiff also suffers from PTSD—resulting from childhood sexual abuse—and depression, and she has difficulties being around others, even family members, with the qualified exception of her ex-husband and children. (R. at 26-29.) She reports trouble with memory, concentration, understanding, and following instructions. (R. at 26.)

The ALJ discounted Plaintiff's testimony of pain and other limitations by finding it was inconsistent with her reports of daily activities, stating "some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining employment and are inconsistent with the presence of an incapacitating or debilitating condition." (R. at 26.) The ALJ fails to provide a single specific example. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (concluding the ALJ erred by failing to "elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony"). As Plaintiff argues (Pl.'s Br. at 20), the fact that Plaintiff can take care of personal hygiene, for example, does not mean she can sustain work activity for a full day or week, and the ALJ does not explain, as she must, how this or any other daily task Plaintiff is able to complete would be transferrable to the work setting, other than by conclusory, blanket reasoning. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597 (9th Cir. 1989). By generally referring to purported inconsistencies between Plaintiff's symptom testimony and daily activities without specificity or support, the ALJ failed to provide a sufficiently specific, clear or convincing reason to discredit Plaintiff's symptom testimony. *See Garrison v. Colvin*, 795 F.3d 995, 1014-16 (9th Cir. 2014).

The ALJ also discredited Plaintiff's symptom testimony because her medical treatment "has been essentially routine and conservative in nature, primarily in the form

of pain medications." (R. at 26.) Again, this conclusion is wholly unsupported by the record. Plaintiff has had multiple surgeries—including spinal fusion surgeries and brain surgery—as well as epidural shots, and indeed the ALJ refers to much of this treatment later in her opinion. If anything, and without wading into the area of formulating a medical opinion, the Court would find that Plaintiff's symptom testimony at the hearing was entirely consistent with her treatment records. The ALJ erred in finding Plaintiff's level of care was inconsistent with her symptom testimony. *See Tackett v. Apfel*, 180 F.3d 1094, 1103 (9th Cir. 1999) (rejecting ALJ finding when no medical opinion in the record supports it). Because this conclusion was unsupported and conclusory, it cannot serve as a specific, clear and convincing reason to discredit Plaintiff's symptom testimony.

The ALJ next formed her own medical opinion, without citation to the medical record, that she could find no evidence in the record that Plaintiff's back, neck, and leg muscles had atrophied, as the ALJ expected, because "muscle atrophy is a common side effect of prolonged and/or chronic pain due to lack of use of a muscle in order to avoid pain." (R. at 27.) Such an unsupported medical evaluation made by the ALJ is wholly inappropriate and fails to serve as a sufficient basis to discredit Plaintiff's testimony.

The final two reasons the ALJ identified for discrediting Plaintiff's symptom testimony are that Plaintiff's reports of marijuana use over the years have been inconsistent and that she worked only sporadically even before claiming a disability, "which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments." (R. at 27.) The first reason, by itself, is simply not sufficiently convincing to disbelieve Plaintiff's testimony in its entirety; there can be multiple reasons Plaintiff's reports of marijuana use were inconsistent over time, and the ALJ did not give Plaintiff an opportunity to explain the purported inconsistencies at the hearing. The second reason is not a reason so much as it is an offhand opinion, and in any case it is not convincing; Plaintiff's sporadic work prior to applying for disability benefits could just as well have been indicative of her will—or at least attempts—to work in the

face of a disability. In short, these reasons are not sufficiently specific, clear or convincing to discredit Plaintiff's symptom testimony.

As a result, the ALJ erred in not accepting Plaintiff's symptom testimony and taking it into account in formulating Plaintiff's RFC. This, by itself, is reversible error. Indeed, the Court agrees with Plaintiff (Pl.'s Br. at 21) that the fact that the ALJ provided no specific, clear and convincing reason to discredit Plaintiff's testimony is sufficient to warrant a reversal of the ALJ's determination that Plaintiff is not disabled under the Act.[4] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040-41 & n.12 (9th Cir. 2007) ("Further proceedings are unnecessary because the ALJ did not provide a legally sufficient reason for rejecting [Plaintiff's] testimony, which *alone* establishes that [Plaintiff] is entitled to benefits.")

### B. The ALJ Did Not Assign Proper Weight to the Assessments of the Treating and Examining Medical Care Providers

Though the ALJ's error in assessing Plaintiff's credibility is dispositive, the Court will also address Plaintiff's argument that the ALJ committed reversible error by assigning inadequate weight to the medical assessments of a treating physician and nurse practitioner—Dr. Khan and Family Nurse Practitioner ("FNP") Babb—and two examining physicians—Dr. Werrell and Dr. General. (Pl.'s Br. at 13-18.) An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester v. Chater*, 81 F. 3d 821, 830-31 (9th Cir. 1996)). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*

---

[4] As a result, the Court need not examine Plaintiff's fourth and fifth arguments for reversal, that the ALJ's own findings at minimum establish that Plaintiff was disabled as of her 50th birthday in 2015, and the ALJ's hypothetical question to the VE did not include all of Plaintiff's limitations. *See Brink v. Comm'r, Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. 2009) (finding ALJ erred by not formulating a hypothetical to the VE that did not include all of Plaintiff's limitations, including those accounting for Plaintiff's testimony).

In stating that "no single assessment has been completely adopted as the [RFC] herein" and instead adopting "those specific restrictions on a function-by-function basis that are best supported by the objective evidence as a whole," the ALJ does not identify specific inconsistencies between the assessments of the treating and examining physicians—indeed, she opines several times that "the opinions of all of these physicians are generally consistent." (R. at 31.) While Defendant's brief tries to identify contradictions in the medical record, any findings of contradictory evidence were less than explicit in the ALJ's opinion. The Court will thus apply the "clear and convincing reasons" standard to the ALJ's rejection of treating and examining physicians' opinions but notes that the ALJ erred under either standard of review of this evidence.

In his care of Plaintiff, Dr. Asipan Khan consistently noted Plaintiff's back, leg and wrist pain, vertigo, nausea, and severe headaches. (*E.g.*, R. at 836-37, 843-44, 847-48.) He completed a functional capacity questionnaire in which he opined that Plaintiff's symptoms were constant and severe enough to interfere with the attention and concentration required to perform even simple tasks, that she needed breaks to lie down during a work day, that she could walk less than one block, that she could sit for only 30 to 45 minutes at a time and a maximum of four to five hours in an eight-hour day, and that she could stand and walk for 15 to 20 minutes at a time for a maximum of one to two hours in an eight-hour day. (R. at 833-34.) He also stated that Plaintiff could lift only 10 pounds occasionally. (R. at 833-34.)

The ALJ concluded, again without the requisite specificity, that Dr. Khan "did not provide medically acceptable clinical or diagnostic findings" to support the functional assessment. (R. at 31.) The ALJ did not provide sufficient specifics, and the Court finds no lack of medical findings on Dr. Khan's part to support his conclusions, as noted above. The ALJ also goes back to her conclusions that Plaintiff's medical treatment has been "conservative" and her activities of daily life are inconsistent with the reported functional limitations. (R. at 31.) As discussed above, neither of those findings is supported by the record. The ALJ's analysis is far from sufficient in providing the clear

and convincing reasons required to discount Dr. Khan's assessment; the analysis does not even provide specific or legitimate reasons to discount the assessment.

Dr. Wayne General performed a psychiatric evaluation of Plaintiff and found that she suffers from bipolar disorder I, PTSD as a victim of sexual abuse, and depression, and gave her a Global Assessment of Functioning ("GAF") score of 50. (R. at 418-24.) As the ALJ herself noted, a GAF score of 41 to 50 "indicates serious symptoms and serious difficulties functioning." (R. at 30 n.1.) Dr. General concluded Plaintiff's "ability to perform work-related tasks is currently in the low average range overall" and that "she is likely to have difficulty getting along with others for any length of time." (R. at 424.)

In formulating Plaintiff's RFC, the ALJ gave "little weight" to Dr. General's assessment because it was "internally inconsistent" and "based on claimant's subjective statements." It is unclear what inconsistencies in Dr. General's report led the ALJ to disregard it, and psychiatric assessments are always dependent in part on a claimant's statements and behavior. Without making its own assessment, the Court finds Dr. General's assessment well-supported by the record and well-reasoned. The ALJ fails to give a single clear and convincing, *or* specific and legitimate, reason to disregard Dr. General's assessment.

The Court need not go on. The ALJ erred in her consideration of the medical evidence of Plaintiff's treating and examining medical care providers, and this, too, is reversible error. *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester v. Chater*, 81 F. 3d 821, 830-31 (9th Cir. 1996)).

### C. The ALJ Improperly Weighed Lay Witness Testimony

The Court will also briefly address Plaintiff's other argument for reversal of the ALJ's opinion: the ALJ improperly disregarded a Third Party Function Report prepared by Plaintiff's ex-husband. (Pl.'s Br. at 21-22.) Mr. Dallas reported that he or another family member visits Plaintiff daily to help her with her chores or drive her to appointments. (R. at 27.) The ALJ disregarded this report, stating Mr. Dallas was not under oath when he made the report and is not a doctor trained to make observations

about Plaintiff's limitations, and the ALJ also found the report to be inconsistent with the medical record. (R. at 27.)

An ALJ must give reasons germane to a particular lay witness to discredit that witness's testimony. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). The Ninth Circuit has noted that family members who observe a claimant's symptoms and daily activities can provide competent testimony to substantiate limitations supported by the medical record or show how an impairment would affect a claimant's ability to work. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Here, the testimony the ALJ chose to disregard is not the type of medical evidence Mr. Dallas is unqualified to give. Nothing in the record indicates that he lacked the qualifications to testify that Plaintiff requires daily help to do her housework and travel to appointments. Nor is there any reason supported by the record that the ALJ or Court should find Mr. Dallas not credible. Moreover, as the Court noted above, the limitations Mr. Dallas states Plaintiff exhibits are not inconsistent with her medical conditions. For these reasons, the ALJ also erred in disregarding Mr. Dallas's testimony.

### D. The Credit-As-True Rule Applies

Plaintiff asks that the Court apply the "credit-as-true" rule, which would result in remand of Plaintiff's case for payment of benefits rather than for further proceedings. (Pl.'s Br. at 23.) The credit-as-true rule only applies in cases that raise "rare circumstances" which permit the Court to depart from the ordinary remand rule under which the case is remanded for additional investigation or explanation. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1102 (9th Cir. 2014). These rare circumstances arise when three elements are present. First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence. *Id*. at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id*. at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id*.

Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id.* (citations omitted).

In this case, the credit-as-true rule applies. As the Court discussed above, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's symptom testimony as well as the opinions of the treating and examining physicians. If this evidence is properly credited, the Court sees no significant conflicts or ambiguities that are left for the ALJ to resolve. Moreover, considering the record as a whole, including Plaintiff's testimony as to her physical limitations—which the Court credits as a matter of law—the Court is left with no doubt that Plaintiff is disabled under the Act. *See Garrison*, 59 F.3d at 1022-23; *Lingenfelter*, 504 F.3d at 1040-41 & n.12.

**IV. CONCLUSION**

Plaintiff raises materially harmful error on the part of the ALJ, and, for the reasons set forth above, the Court must reverse the SSA's decision denying Plaintiff's Application for Supplemental Security Income benefits under the Act and remand for a calculation of benefits.

IT IS THEREFORE ORDERED reversing the September 24, 2014 decision of the Administrative Law Judge, (R. at 21-34), as upheld by the Appeals Council on March 4, 2016, (R. at 1-3).

IT IS FURTHER ORDERED remanding this case to the Social Security Administration for a calculation of benefits.

IT IS FURTHER ORDERED directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 25th day of September, 2017.

Honorable John J. Tuchi
United States District Judge